**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**CLOTTIE HARRINGTON,**

    **Plaintiff,**

**-VS-**

CASE NO.: 1:19CV64-SA-DAS

**LOANMAX, LLC d/b/a LOANMAX**
**TITLE LOANS,**

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.    Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

**INTRODUCTION**

2.    The TCPA was enacted to prevent companies like LOANMAX, LLC d/b/a LOANMAX TITLE LOANS (hereinafter "Defendant" or "LoanMax"), from invading American citizens' privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.    "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and

1

acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

6. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *The FCC's Push to Combat Robocalls & Spoofing* (website visited on Jan. 2, 2019), https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

2

8.     Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.     The alleged violations described herein occurred in Oktibbeha County, Mississippi. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a natural person, and citizen of the State of Mississippi, residing in Starkville, Oktibbeha County, Mississippi.

11.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Defendant is a limited liability company with its principal place of business located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005 and which conducts business in the State of Mississippi through its registered agent, C T Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3

13.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue, (662) *** - 9660, and was the called party and recipient of Defendant's hereinafter described calls.

14.     Defendant placed an exorbitant number of automated calls and text messages to Plaintiff's cellular telephone (662) *** - 9660 in an attempt to collect on an automobile loan.

15.     On several occasions over approximately the last eighteen (18) months, Plaintiff instructed Defendant's agents(s) to stop calling her cellular telephone.

16.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls/text messages were being initiated from, but not limited to, the following phone number: (662) 323-9203, and when that number is called, a live person answers the phone and says "Thank you for calling LoanMax."

17.     Upon information and belief, some or all of the calls/text messages the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

18.     Plaintiff will testify that she knew it was an autodialer because of the vast number of calls/text messages she received, and because when she answered a call from the Defendant, she would hear an extended pause before an agent/representative would come on the line.

19.     Moreover, Plaintiff would often be met with a prerecorded message or artificial voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A), upon answering a call from Defendant asking her to hold the line for the next available representative.

20.     Plaintiff also received a substantial number of text messages from Defendant.

21.     Defendant attempted to collect an alleged debt related to an auto loan from the Plaintiff by this campaign of telephone calls.

22.     On or about March 10, 2018, Plaintiff was involved in a car accident that resulted in her vehicle being declared totaled. Following the accident, Plaintiff's insurance company was to cover the remainder of the balance owed on the vehicle. However, only weeks after the accident occurred, Defendant began calling Plaintiff's cellular telephone incessantly to collect on what Defendant alleged to be a remaining balance of approximately $1,300.00.

23.     Shortly after the calls began, in or around April of 2018, Plaintiff answered a call from Defendant, was met with an extended pause, held the line to be connected to agent/representative, was eventually connected to an agent/representative of Defendant, and explained to this agent/representative that she did not believe she owed anything on the vehicle as it was to be covered by her insurance, any inquiries related to an outstanding balance that Defendant alleges is owed needs to be directed to her insurance carrier, and demanded that Defendant cease placing automated calls to her aforementioned cellular telephone number.

5

24. During the aforementioned phone conversation in or about April of 2018 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls/text messages to Plaintiff's cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

25. Each subsequent call/text message the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

26. Each subsequent call/text message the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and/or willful.

27. As recently as January 21, 2019, due to continued automated calls/text messages to her aforementioned cellular telephone number from the Defendant, Plaintiff answered yet another call from Defendant, was eventually connected to a live agent/representative of Defendant, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular phone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

28. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling/texting the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

29. On at least ten (10) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding her account, held the line to be

connected to a live agent/representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

30.     Each of the Plaintiff's requests for the harassment to end was ignored.

31.     Defendant has placed approximately five-hundred (500) actionable calls/text messages to Plaintiff's aforementioned cellular telephone number in violation of the TCPA (or as will more accurately be determined upon a thorough review of Plaintiff's wireless records and/or Defendant's records).

32.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

33.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

34.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications

35.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

37.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left occupied space in Plaintiff's phone or network.

38.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

39.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, embarrassment, and aggravation.  These calls were particularly worrisome as Plaintiff already struggles with high blood pressure.

8

40.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

41.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

42.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

43.     Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant call list.

44.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

45.     Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

46.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

47.     Plaintiff realleges and incorporates paragraphs one (1) through forty-six (46) above as if fully set forth herein.

48.     Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

49.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, CLOTTIE HARRINGTON, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, LOANMAX, LP d/b/a LOANMAX TITLE LOANS, for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

/s/

ROCKY WILKIN, ESQUIRE
Mississippi Bar No. 99707
MORGAN & MORGAN, PLLC
4450 Old Canton Road, Suite 200
Jackson, MS 39211
Telephone:  (601) 503-1654
Facsimile:  (601) 503-1606
Email: Rocky@ForThePeople.com
Secondary: SHill@ForThePeople.com
KZhang@ForThePeople.com

*Attorneys for Plaintiff*

10